MOOS et al. v. FIRST STATE BANK OF UVALDE et al.

No. 2367.

Court of Civil Appeals of Texas. Beaumont.
May 19, 1933.
Rehearing Denied May 24, 1933.

Cunningham, Moursund, Johnson, Rogers & Slatton, of San Antonio, for appellants.

G. B. Fenley and Atlas Jones, both of Uvalde, for appellees.

O'QUINN, Justice.

November 12, 1930, August Moos, a resident of Uvalde county, Tex., died in the city of San Antonio, Tex. He left a will in which the First State Bank of Uvalde, Tex., was made independent executor of said will.

November 22, 1930, the First State Bank of Uvalde, Tex., filed its application in the county court of Uvalde county, Tex., to probate the will, and attached a copy of the will to its petition. John Moos, brother of August Moos, deceased, and his wife, Catherine Schaepfer Moos, legatees under the will, by their petition joined said bank in its application for the probate of the will.

Albert Moos, Henry Moos, Wm. J. Moos, and Matilda Lynn, joined by her husband, Henry Lynn, as heirs at law and legatees under said will, seasonably filed in the county court of Uvalde county, Tex., sitting in probate, their contest of said will, on the grounds:

(a) That said will was not executed as required by law, because same was not attested by two competent and credible witnesses, in that the will was signed by only two persons as witnesses, one of whom was H. W. Little, who, as a stockholder and vice president of the bank named as independent executor of the will, was an interested party and would profit by the will; and (b) that said testator was aged, sick, and infirm, and the execution of the will was the result of undue influence brought to bear upon deceased by John Moos, and his wife, Catherine Moos, and H. W. Little, one of the subscribing witnesses to the will, who was at the time a stockholder and vice president of First State Bank of Uvalde, named as independent executor in the will; and (c) that at the time of the execution of said will the testator, August Moos, was of unsound mind.

Upon a trial, the will was admitted to probate by the county court of Uvalde county, and the contestants duly appealed to the district court of said county, where the case was tried to a jury upon the one special issue of mental capacity of deceased to make a will, which the jury answered in the affirmative, and judgment was entered probating the will. From that judgment this appeal was taken.

Appellants' first proposition insists that the will was not executed as required by law, because, not being wholly written by the testator, was not attested by two credible witnesses, as required by article 8283, R. S. 1925, and hence not subject to probate.

This contention is based upon the fact that but two witnesses signed the will, and one of these, H. W. Little, was a stockholder in, and vice president of, the First State Bank of Uvalde, Tex., which bank was named in the will as independent executor of the will, and would profit by the will. The insistence is that said witness Little was an interested party and not a competent person to witness the will.

The expression "credible witness," in relation to the attestation of wills, has uniformly been interpreted to mean "a competent witness"; that is, a witness competent under the law to testify to the fact of the execution of the will. Gamble v. Butchee, 87 Tex. 643, 30 S. W. 861; Brown v. Pridgen, 56 Tex. 124; Kennedy v. Upshaw, 66 Tex. 442, 1 S. W. 308. The competency of the other witness not being questioned, the question is, Was Little, he being a stockholder in and vice president of the First State Bank of Uvalde, named as independent executor in the will, and which would profit by virtue of such position, such an interested person as would disqualify him from witnessing the will? We do not think so. In Gamble v. Butchee, 87 Tex. 643, 30 S. W. 861, it is held that the wife of a legatee in a will is competent to witness the will under the statute. In that case there were two witnesses to the will, and each of them was the wife of a legatee under the will. It was insisted that, as their husbands were legatees and would profit by the will, they were interested parties and not competent to attest the will. The Supreme Court held them competent. Certainly the interest of a wife of a legatee in a will must, in law, be as direct and great as a stockholder or officer of a bank named executor in a will, which profits only to the extent of the commissions on the estate allowed by law for its services. 28 R. C. L. subject Wills, § 90, p. 136. It is said

890

that, by the weight of authority, a person who is an officer or otherwise in a religious or charitable institution to be benefited by a will, is a competent witness to attest the will. 28 R. C. L., Wills, p. 135. So, it h'as been held that a will giving property to a local lodge of a fraternal order may be attested by members of such lodge. Kennett v. Kidd, 87 Kan. 652, 125 P. 36, 44 L. R. A. (N. S.) 544, Ann. Cas. 1914A, 592. Also that "in a majority of the jurisdictions the fact that a person is named by 'a testator in his will as executor does not affect his competency as an attesting witness to the will where he has no beneficial interest therein other than the commission on the estate allowed by law for his services." 28 R. C. L., Wills, § 90, p. 136; 40 Cyc. 1113; Hayden v. Hayden, 107 Neb. 806, 186 N. W. 972, 25 A. L. R. 305; State v. Superior Court, 143 Wash. 578, 255 P. 960.

█ The ninth proposition complains that the court erred in refusing to submit to the jury the issue of undue influence. Contestants, 'appellants here, pleaded that the execution of the will was procured by, and was the result of, undue influence exerted upon the testator by John Moos, Catherine Moos, wife of John Moos, and H. W. Little. They offered much evidence tending to prove this allegation, and prepared and presented to the court a special issue submitting this issue to the jury, which the court refused to give, it is presumed, because the court was of the opinion that said issue w'as not raised by the evidence.

The testator, August Moos, had never been married, was seventy-four years old, and for more than two years had been in very bad health. At the time of the making of the will, he was, and for two years or more had been, suffering from cancer of the right kidney, 'and also had floating of the left kidney. The cancer had eaten into his liver, his stomach, extended up under the diaphragm, and affected his intestines. He was quite emaciated and weak, could hardly walk or dress himself, and suffered intensely. He was very hard of hearing, 'and, according to Dr. Johnson, who was shown to be an outstanding expert in treating persons afflicted as was testator, and who attempted to operate on testator, but desisted, saying he was beyond hope, his mentality was quite weak, if not undermined seriously. For thirteen years contestees, John Moos, Catherine Moos, wife of John Moos, and their children, had lived with testator in testator's home near Uvalde. H. W. Little, one of the attestors, was president of, principally owned and managed, a wholesale grocery concern located at Uvalde. He sold testator $5,000 of the stock of the grocery comp'any. He borrowed money from testator—owed him money when he died. Little was also vice president of the First State Bank of Uvalde, where testator did much of his banking. He talked to testator several times before the will was made about testator making a will. He offered to draw it for testator, 'and only a few days before the will was executed Mrs. John Moos went to Little and told him that August Moos was at home and wanted to see him. Little said he 'went to August Moos' place where he lived with John and Catherine Moos, and was shown into August Moos' room by Mrs. John Moos. Little says that on that d'ay he got the data for drawing the will from August Moos, and suggested to testator that he appoint the First State Bank of Uvalde executor. The bank was not then qualified to act as such, but afterwards obtained such authority, and filed the application for probate of the will. Little procured Darwin Suttle, an attorney, to draw the will, and paid the charges for same. Little, in answering the question, "Who took care of his (August Moos) property for him?" said, "I took care of it myself." The day that Little s'ays he got the data from which to draw the will, August Moos: became seriously ill, and it 'was suggested by one of the contestants that he should be taken to the hospital at San Antonio, and Mrs. Catherine Moos said she would take him in a day or two. Two days later she and her husband, John Moos, took him to Uvalde to Little's office,' and he there signed the will, and she then took him to San Antonio to Dr. Johnson, and he was placed in the hospital. The will was executed on December 10, 1929, and, as before stated, on that day Mrs. John Moos and her husband took testator in an automobile to Little's office, where he signed the will, and that s'ame day she carried him to San Antonio to Dr. Johnson for treatment. We have stated, briefly, testator's condition when he arrived at 'San Antonio, as told by Dr. Johnson. It was shown that John Moos and his wife drew checks on and against August Moos' bank account at the First State Bank at Uvalde. One witness testified that Mrs. John Moos said she attended to August Moos' business. It further appears that at about the time of the execution of the will Mrs. Catherine Moos, wife of John Moos, and who lived in the home of testator with him, and had so lived for about thirteen years, claimed the sum of $5,000 against the estate of August Moos for services she had rendered him, also that she was charging him $30 a month for board. The will not only gave Mrs. Moos $5,-000, as a special bequest, but about 400 acres of valuable land as well. Evidence was also adduced to the effect that August Moos, not long before the execution of the will, said on several different times that he was not going to make a will, but that he w'as going to "let his people fuss over it." There were many other circumstances shown that we think would have bearing upon this issue. There is no evidence to show any ill will or dislike on the part of August Moos, testator, towards any of his brothers, or his sister, Mrs. Lynn,

contestants, or any neglect or lack of interest of any of them toward testator, but to the contrary he constantly visited and stayed with them in their homes, and they were kind to him and studious of his welfare.

The contestants Albert Moos, Henry Moos, and Wm. J. Moos were brothers of testator, August Moos, and Matilda Lynn, one of the contestants, was his sister. The contestee John Moos was also a brother of August Moos, and Catherine Moos was the wife of John Moos. Neither John Moos nor his wife testified.

We think that, when all the facts and circumstances are considered, they not only raise the issue of undue influence, but would abundantly sustain such a finding by the jury. It was error for the court to refuse to submit the issue, because of which the judgment will have to be reversed and the cause remanded for another trial. Brown v. Pridgen, 56 Tex. 124; Craycroft v. Crawford (Tex. Com. App.) 285 S. W. 275; Buchanan v. Davis (Tex. Civ. App.) 300 S. W. 985, 989, 990; Russell v. Boyles (Tex. Civ. App.) 29 S.W.(2d) 891; 28 R. C. L. Wills, § 92, p. 139; Id., § 97, p. 142.

■ In relation to the failure of contestees John Moos and his wife, Catherine Moos, charged by contestants with using undue influence upon testator, August Moos, to procure the execution of the will, to testify, in discussing this very phase of a will case, the Supreme Court, speaking through the Commission of Appeals in Craycroft v. Crawford, 285 S. W. 275, at page 282, says: "Silence, under the conditions disclosed, in our opinion, had some probative force as pointing to undue influence for a source of the will (M., K. & T. Ry. Co. v. Day, 104 Tex. 237, 243, 136 S. W. 435, 34 L. R. A. (N. S.) 111; 22 C. J. pp. 111, 112, 115, 116; Sullivan v. Fant (Tex. Civ. App.) 160 S. W. 612, 616), and as strengthening the unfavorable inferences which the jury may have drawn from the other facts and circumstances."

This holding was expressly approved by the Supreme Court.

Moreover, we think that appellees admit that the issue of undue influence was raised, because at least one of appellees' counsel, on page 13 of their brief, says: "6. There are only two issues in this case, one whether or not August Moos was of sound mind when he signed his will and the other whether or not his will was the result of undue influence exercised upon him at the time he signed said will."

This admission says that the issue of undue influence was in the case, but the court thought not, and refused to submit the issue.

■ We think the proffered testimony by contestants of the witnesses West and Russell, which was rejected, and of which contestants complain, should have been admitted. None of it was too remote as to when

before the execution of the will, or after its execution, the matters offered in evidence occurred. As was said in Buchanan v. Davis (Tex. Civ. App.) 300 S. W. 985, 990, "in determining the issues of mental capacity and undue influence, wide latitude is allowed both contestants and proponents, the circumstances of any probative value being admissible." All matters occurring within a reasonable time before or after the execution of a will that would probably throw light on its execution should be received; its weight, of course, is for the jury. Morris v. Stanford (Tex. Civ. App.) 295 S. W. 347, 349; Jackson v. Watson (Tex. Com. App.) 10 S.W. (2d) 977, 980; Smith v. Thornhill (Tex. Com. App.) 25 S.W.(2d) 597, 600; Caddell v. Caddell, 62 Tex. Civ. App. 461, 131 S. W. 432; 14 R. C. L., Insanity, § 71.

■ Contestants proposed to prove that shortly after the burial of testator, John Moos, contestee and legatee, in a conversation with Wm. Moos, also a legatee and a brother of John Moos, said to Wm. Moos: "You ought to be glad I was out here with August Moos; if it had not been for me you would not have received anything under the will."

The following objection was made to the admission of this evidence: "The Bank, John Moos and Catherine Moos, object to the evidence sought to be introduced for the reason that the evidence shows that the witness is a party to the suit, that he is a brother of August Moos, the testator in the will; and that he is incompetent to testify to the matter sought to be proven, for the reason he is a party to the suit and is a brother of the testator in the will, and a devisee in the will. And an attempt to prove up a conversation he had with John Moos with reference to the will would be an attempt to prove a statement made by John Moos that the law would not let John Moos himself testify to, because he is a party to the suit and a devisee in the will; and for the reason that the witness cannot be permitted to testify because he is incompetent to testify to a statement John Moos himself is incompetent to testify to. And for the reason that the evidence is self-serving, the evidence sought to be introduced is self-serving. And for the reason it would be hearsay as to anything John Moos said, for the reason that John Moos if he made any statement that statement was not under oath and the evidence of this witness as to such statement would be purely hearsay. And the further reason, that the evidence is not admissible for the reason that it is self-serving as to the witness himself. And also for the reason that anything John Moos might have said and might be injurious to John Moos could not be considered as evidence against the Bank and as against Mrs. Catherine Moos, unless the contestants first show that there is a conspiracy between the Bank, and John Moos and Catherine Moos, to

over-influence August Moos into making a will, and unless it is shown that there was a conspiracy between John Moos, Catherine Moos and the First State Bank to get up a will, and to forge August Moos' name to it."

The objection was sustained, and the evidence rejected. The evidence was admissible. It tended to support the allegation of undue influence. It was an admission by John Moos, one of the legatees, against interest, and also an admission that he had in some manner influenced testator in the making of the will in which his (John Moos') wife was given a special bequest of $5,000 and some 400 acres of valuable land, this in addition to John Moos receiving his full proportion of the remainder of the estate to be shared with the other brothers and sister of testator. The insistence that its admission might be injurious to the interests of the other contestees, the bank, and Mrs. John Moos, and therefore not admissible, is without merit. Johnson v. Poindexter (Tex. Civ. App.) 9 S.W.(2d) 172 (writ refused); Scott v. Townsend, 106 Tex. 322, 166 S. W. 1138; Adams v. Adams (Tex. Civ. App.) 253 S. W. 605.

Contestants offered to prove by Henry Lynn, husband of Matilda Lynn, sister of testator and a legatee under the will, and also a sister of John Moos, contestee and a proponent of the will: (a) That John Moos, in August, 1929, before the will was executed on December 10, 1929, said to Lynn: "Henry, I want you to go up to the house and persuade August Moos to make a will," to which witness replied: "Johnny, I am not going to try to make August make any will; I want him to do whatever he wants to do about it"; and, (b) that in the summer of 1930, after the will had been executed, John Moos said to witness: "Henry, you want to be sure and watch August Moos; he is not in his right mind and is not competent to take care of his own business, and if anybody gets around him they will beat him out of his property"; and (c) that on November 13, 1930, the next day after August Moos died, John Moos said to witness: "I don't know anything about August (referring to deceased testator) having made any will"; and, (d) that shortly after the funeral of August Moos, testator, John Moos, in a conversation with witness about the will of August Moos, at the residence of said John Moos, said to witness: "All of you (meaning contestants) ought to be glad that I was out here (meaning with deceased at Uvalde); if it hadn't been for me you all (meaning contestants) would not have gotten anything (meaning under the will). These people at Uvalde would have got it all."

All this testimony was objected to by contestees on the ground that said evidence was immaterial, irrelevant, hearsay, self-serving, and coming from a party to the suit, and hence not admissible. The objections were sustained, and the testimony excluded. This action of the court is challenged by contestants' fifth, sixth, seventh, and eighth assignments. The assignments are sustained. Contestants alleged that the will was the product of undue influence, exerted upon August Moos, testator, by John Moos and his wife, Catherine Moos, contestees and legatees under the will, in connection with one H. W. Little. The testimony would have tended to show the interest of said John Moos and his wife, and efforts to get August Moos to make a will, and thus to support the allegation of undue influence. The evidence was admissible. Johnson v. Poindexter (Tex. Civ. App.) 9 S.W.(2d) 172 (writ refused); Scott v. Townsend, 106 Tex. 322, 166 S. W. 1138; Adams v. Adams (Tex. Civ. App.) 253 S. W. 605.

Other assignments are presented, some of which we think show reversible error, but, as they are of such nature as they are not likely to arise upon another trial, they will not be discussed.

The judgment is reversed, and the cause remanded.